THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JERRY YOUNG, Defendant-Appellant.

Second District   No. 2—92—0016

Opinion filed September 1, 1993.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Marilyn Martin, of Chicago, for appellant.

Michael J. Waller, State's Attorney, of Waukegan, and Patrick J. O'Shea, of Law Offices of Patrick J. O'Shea, of Lombard (William L. Browers, Lisa A. Hoffman, and John X. Breslin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE QUETSCH delivered the opinion of the court:

Defendant, Jerry Young, entered a straight plea to the possession of between 30 and 500 grams of cannabis with the intent to deliver, in violation of section 5(d) of the Cannabis Control Act (Ill. Rev. Stat. 1989, ch. 56½, par. 705(d) (now 720 ILCS 550/5(d) (West 1992))). On appeal he claims that his trial counsel was ineffective for failing to investigate his mental records. According to defendant, such investigation would have revealed that defendant was not competent to enter a guilty plea, or at least it would have revealed a valid defense to the offense charged. Defendant also claims that the trial court abused its discretion when it sentenced him to an extended term of eight years' imprisonment.

To establish a factual basis for defendant's plea, the State informed the trial court of the following facts. Officer Gary Govecar of the Lake County Metropolitan Enforcement Group arranged for a confidential informant to purchase marijuana from defendant. On March 12, 1991, defendant exhibited the marijuana to the informant while the two were riding in a car. An officer from the Round Lake police department executed a traffic stop of the car in which defendant and the informant were riding. The officer retrieved the mari-

juana from under defendant's seat. Defendant admitted that he intended to sell the marijuana to the informant.

After the trial court admonished defendant of his rights, the trial court asked defendant if his plea had been forced or coerced. Defendant responded in the negative. The trial court then asked defendant if he felt that his attorney had represented him well. Defendant responded in the affirmative. Defendant also confirmed that he had no complaints about his attorney's performance.

At defendant's sentencing hearing, the State presented the testimony of Officer Govecar. Govecar testified that a confidential informant contacted the Lake County sheriff's office with information that defendant was involved in selling marijuana. The informant volunteered to participate in apprehending defendant. On March 6, 1991, the informant introduced defendant to Govecar, who was working undercover. The three men drove together to another location. The informant asked defendant if he had any marijuana, and defendant sold the informant a "baggy" of marijuana for $140. As they were returning to the location where they had met defendant, Govecar and the informant inquired into purchasing a larger quantity of marijuana from defendant. Defendant told the men that he could procure a pound of marijuana within 20 minutes and that he would sell it for $2,000. Govecar and the informant told defendant that they could not obtain that much money until the following day.

On March 7, 1991, Govecar and the informant once again met with defendant. Defendant stated that he did not have the marijuana with him, but that he could get it within 20 minutes. Defendant told Govecar and the informant that they could either pay him the $2,000 in advance and he would procure the marijuana, or they could accompany him when he purchased the marijuana. Govecar rejected both terms.

After the unsuccessful March 7, 1991, transaction, Govecar arranged for the informant to participate in the March 12, 1991, transaction which led to defendant's arrest. Govecar further testified that the informant had told him after defendant's arrest that defendant had been under the influence of drugs at the time of the transaction.

The presentence report established that defendant had an extensive criminal history beginning in 1970 when defendant was a juvenile. During the 10 years prior to his arrest in this case, defendant had been convicted three times of burglary, once of battery, once of aggravated battery, twice of theft, once of shoplifting, twice of driving while he was under the influence of alcohol, four times of driving while his license was revoked, once of criminal trespass to a motor ve-

hicle, and once of resisting a peace officer. Most recently, in March 1990, defendant was paroled from the Wisconsin Department of Corrections after serving 2½ years of a four-year sentence for burglary and theft. Defendant was on parole when he committed the offense in this case, although he completed his parole without revocation. Defendant never successfully completed any other term of supervision, probation, or parole. In addition, while defendant was free on bond for the instant offense, he tested positive for cannabis.

According to defendant's presentence report, a 1982 evaluation of defendant by Lake County Mental Health revealed that defendant operated "on a dull-normal level of intellectual functioning," displayed "an irregular thought process," and had difficulty thinking abstractly. This evaluation stated that defendant "may be described as evidenting [sic] an antisocial personality disorder." In addition, defendant was hospitalized for approximately two weeks in 1975 for an "acute psychotic episode."

Defendant's probation officer enlisted Dr. John Dunne to perform a current psychiatric evaluation of defendant. According to Dr. Dunne, defendant's full-scale IQ was 76. This IQ was lower than defendant's IQ in 1982. Dr. Dunne stated that defendant's drop in IQ may have reflected "neurological damage stemming from his chronic abuse of alcohol and drugs." Dr. Dunne observed that defendant's verbal skills were better than his perceptual organization skills. However, his verbal skills were weak, and at times he had difficulty communicating. Dr. Dunne stated that defendant was not psychotic but seemed to have "significant psychological and emotional problems." In addition, Dr. Dunne stated that defendant depended on his wife to manage his daily affairs. Dr. Dunne further stated that, despite defendant's 1982 Lake County mental health evaluation, defendant did not seem to have strong antisocial tendencies, although he did show a "tendency toward impulsiveness."

Defendant suffered a grand mal seizure in June 1991, approximately three months before he entered his guilty plea.

The presentence report further indicated that defendant had been using drugs and alcohol since his early teens. Defendant was also diagnosed as an alcoholic in 1982. He claims that he stopped drinking and using drugs in 1987. However, he tested positive for marijuana during the pendency of this case. Furthermore, a recent employer of defendant reported that he believed that defendant overdosed on prescription drugs. Defendant's probation officer stated in the presentence report that she believed defendant continued to use alcohol and drugs despite his denial.

In mitigation, defendant presented the testimony of Martha Rogers, a pretrial services employee. Rogers stated that other than one traffic offense, defendant complied with the terms of his release while he was out on bond during the pendency of his case. Rogers admitted on cross-examination that defendant tested positive for cannabis.

Linnea Cunningham, a friend and neighbor of defendant and his wife, testified regarding defendant's good moral character. She also testified that she had observed that defendant was good with children and that he did not drink.

Laura Young, defendant's wife, testified that she had observed changes in defendant since the last time he was in prison. She testified that before he was incarcerated he frequently went to bars and stayed out late. After his 1990 release from prison, he got a job at the YMCA. She further testified that he helped her take care of her two children, aged 11 and 14. She stated that defendant's return to prison would be a hardship to her and to her children. She had learned that her son had cried to a neighbor about the possibility of defendant's returning to prison.

Defendant testified that after his release from prison he started working at the YMCA seven days per week, 12 hours per day. He also testified to seeing his pastor on a regular basis and sending him letters. He also stated that he and his wife planned to buy a house. Defendant testified that he felt that he had been set up by the informant. Defendant also presented letters from his father, a friend of defendant's family, J.J. Thornson, and Pastor Peter Paine.

The State urged the trial court to impose the maximum extended-term sentence of 10 years based on defendant's extensive criminal history and the large quantity of marijuana involved in this case. Defendant, on the other hand, argued that a minimum sentence of imprisonment would be appropriate because he was "goaded" into committing the crime.

The trial court found in mitigation that defendant neither caused nor threatened serious physical harm and that defendant did not contemplate that his conduct would cause or threaten serious physical harm. The trial court rejected defendant's contention that he was acting under strong provocation or that there were grounds excusing or justifying his conduct. The trial court acknowledged that someone other than defendant facilitated the conduct. Nonetheless, the trial court stated: "I find [defendant] was fully aware of what he was doing, and his participation was quite active, and *** that his ability to produce with great alacrity and speed the amount of marijuana requested shows that he was quite seriously involved." The trial court

further stated: "[Defendant's] imprisonment, indeed, will entail hardship upon his dependants, and most imprisonment does do exactly that." The trial court found that there was no evidence of mental retardation, but that there was evidence of a low functionality.

Regarding the likelihood that defendant would commit future crimes, the trial court quoted from the presentence report that defendant manifested "poor understanding of himself and his responsibilities as an adult," "pervasive impulsivity," and "routine lack of good judgement," and that he evidenced an antisocial personality disorder. The trial court rejected the remaining mitigating factors listed in section 5—5—3.1 of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.1 (now 730 ILCS 5/5—5—3.1 (West 1992))). The trial court also found that defendant was a particularly poor candidate for probation.

In aggravation, the trial court placed the greatest weight on defendant's "background of delinquency and criminality." The trial court pointed out that defendant had a history of drug abuse and treatment. The trial court acknowledged that defendant's 20-year involvement with drugs may have affected his level of functioning. He pointed out that, although defendant denied having used drugs since 1987, he tested positive for drugs in September 1991. The trial court stated: "I am quite convinced that he still uses substances notwithstanding his denial, and do find that his record clearly indicates that he has been for some time a career criminal who had been involved with drugs as a user and a seller, and his prospects of rehabilitation, in my view, are next to nil, unfortunately." The trial court found that probation would deprecate the seriousness of the offense and that, because of defendant's criminal history, an extended term was appropriate.

The trial court sentenced defendant to eight years' imprisonment and also imposed a $50 laboratory fee and a $2,500 street-value fine. The trial court fully admonished defendant in accordance with Supreme Court Rule 605(b) (134 Ill. 2d R. 605(b)).

Defendant filed a motion to reconsider his sentence pursuant to section 5—8—1(c) of the Code (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(c) (now codified, as amended, at 730 ILCS 5/5—8—1(c) (West 1992))). Defendant argued that his eight-year sentence was excessive because (1) he neither caused, threatened, nor intended to cause or threaten harm; (2) his imprisonment would result in excessive hardship to his dependents; and (3) his offense was probationable. The trial court denied defendant's motion. Defendant never filed a motion

to withdraw his guilty plea pursuant to Supreme Court Rule 604(d). 134 Ill. 2d R. 604(d).

Defendant argues on appeal that his guilty plea should be vacated because his trial counsel was ineffective for failing to investigate his medical records. According to defendant, these records would have revealed psychological problems and intellectual limitations bearing on defendant's fitness to enter a voluntary guilty plea. Defendant further argues that, even if he was technically fit to plead guilty, pleading guilty was unwise. According to defendant, had his counsel discovered his psychological and mental impairments, his counsel would have learned that defendant was a highly suggestible individual, and he would have been able to formulate a strong entrapment defense.

Defendant points out that the following information was available to his attorney at the time he entered his guilty plea: his history of drug and alcohol abuse, his 1975 psychotic episode and hospitalization, the 1982 mental health evaluation, and his June 1991 grand mal seizure. This information should have alerted his attorney to the possibility that defendant suffered significant impairments. Defendant further points out that his probation officer saw fit to order a psychological evaluation based on this evidence of impairment. Defendant argues that the information in Dr. Dunne's report further supports his contention that either he was unfit to enter a guilty plea or that he had a valid entrapment defense and therefore should not have pleaded guilty.

Defendant, however, never filed a motion to withdraw his guilty plea as required by Supreme Court Rule 604(d) (134 Ill. 2d R. 604(d)). Rule 604(d) provides, in part:

> "No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to withdraw his plea of guilty and vacate the judgment. The motion shall be in writing and shall state the grounds therefor. *** Upon appeal any issue not raised by the defendant in the motion to withdraw the plea of guilty and vacate the judgment shall be deemed waived." 134 Ill. 2d R. 604(d).

Compliance with Rule 604(d) is a condition precedent to an appeal from a judgment entered on a guilty plea. (*People v. Wilk* (1988), 124 Ill. 2d 93, 107.) In *Wilk*, our supreme court stated:

> "A hearing under Rule 604(d) allows a trial court to immediately correct any improper conduct or any errors of the trial court that may have produced a guilty plea. The trial court is the place for fact finding to occur and for a record to be made

concerning the factual basis upon which a defendant relies for the grounds to withdraw a guilty plea. If the motion to withdraw the plea is denied, that decision can be considered on review." *Wilk*, 124 Ill. 2d at 104.

■ Because defendant filed a motion to reconsider his sentence, we have jurisdiction to review the judgment in this case. (*People v. Wallace* (1991), 143 Ill. 2d 59, 61.) However, for the purposes of this appeal, defendant has waived issues relating to the validity of his guilty plea because he did not raise those issues in a Rule 604(d) motion. *People v. Carroll* (1990), 195 Ill. App. 3d 445, 446-47.

The instant case illustrates precisely why a defendant must file a Rule 604(d) motion before appealing his guilty plea. The trial court never heard defendant's claims that his trial counsel failed to investigate his medical records and that he was unfit to enter a guilty plea. Therefore, defendant never had an opportunity to develop a record to support his claim. Defendant cites evidence in his presentence report of his low intellectual functioning. However, he has provided no direct evidence of how his impairments rendered him unfit to enter a guilty plea. To infer such unfitness from the evidence in the record would be speculation at best. Furthermore, the record contains no evidence that defendant's attorney failed to investigate his medical records and consider whether defendant was fit to enter a guilty plea. Likewise, there is no evidence in the record of defendant's inability to communicate with his attorney. The trial court is the proper place for making this record. *People v. Keele* (1991), 210 Ill. App. 3d 898, 903.

We acknowledge that defendant may not have been at fault for failing to file a motion to withdraw his guilty plea. The court explained in *Wilk* that where a defendant's failure to file a Rule 604(d) motion stems from the ineffective assistance of his trial counsel, the appropriate remedy for that defendant lies in the Post-Conviction Hearing Act (Ill. Rev. Stat. 1989, ch. 38, par. 122—1 *et seq.* (now codified, as amended, at 725 ILCS 5/122—1 *et seq.* (West 1992))). (*Wilk*, 124 Ill. 2d at 105; *People v. Umfleet* (1989), 190 Ill. App. 3d 804, 809.) A proceeding under the Post-Conviction Hearing Act would provide defendant with the opportunity to develop a record in support of his claim.

Next, defendant argues that the trial court abused its discretion in sentencing him to an extended eight-year term. Specifically, defendant claims that the trial court did not consider three mitigating factors: (1) defendant's mental retardation; (2) the hardship that the sentence would impose on his dependents; and (3) his alcoholism. Defendant also claims that the trial court improperly considered the

quantity of cannabis involved in the offense and that it improperly speculated that defendant suffered from an antisocial personality disorder.

Defendant did not raise the majority of these contentions in his motion to reconsider his sentence. The State points out that any issue not raised in a motion to reduce a sentence is waived on appeal. (*People v. Bronson* (1991), 216 Ill. App. 3d 839, 842.) However, we will review defendant's contentions in light of the fact that he did generally inform the trial court of his argument that his sentence was excessive (see *People v. Franks* (1977), 51 Ill. App. 3d 886, 890) and in light of the substantial rights involved (see *People v. Martin* (1988), 119 Ill. 2d 453, 458; *People v. Pierce* (1992), 223 Ill. App. 3d 423, 441).

We find that defendant's arguments are without merit. Defendant does not dispute that he was eligible for an extended-term sentence because he had been convicted of a similar or greater class felony within the past 10 years. (See Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.2(b)(1) (now codified, as amended, at 730 ILCS 5/5—5—3.2(b)(1) (West 1992)).) The possession of between 30 and 500 grams of cannabis with the intent to deliver is a Class 3 felony. (Ill. Rev. Stat. 1989, ch. 56½, par. 705(d) (now 720 ILCS 550/5(d) (West 1992)).) As such it carries a maximum extended sentence of 10 years. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—2(a)(5) (now 730 ILCS 5/5—8—2(a)(5) (West 1992)).) An eight-year sentence, therefore, was within the statutory range.

A trial court's sentencing determinations are entitled to great weight (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154), and we will not disturb them absent an abuse of discretion. (*People v. Felella* (1989), 131 Ill. 2d 525, 541; *People v. Waldron* (1991), 219 Ill. App. 3d 1017, 1046.) "Before this court will interfere with the sentence imposed, it must be manifest from the record that the sentence is excessive and not justified under any reasonable view which might be taken of the record." *People v. Smith* (1991), 214 Ill. App. 3d 327, 338.

■ We first reject defendant's contention that the trial court did not consider defendant's mental retardation as a mitigating factor. (See Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.1(a)(13) (now 730 ILCS 5/5—5—3.1(a)(13) (West 1992)).) The Code defines "mental retardation" as:

> "sub-average general intellectual functioning generally originating during the developmental period and associated with impairment in adaptive behavior reflected in delayed maturation or reduced learning ability or inadequate social adjustment."

Ill. Rev. Stat. 1989, ch. 38, par. 1005—1—13 (now 730 ILCS 5/ 5—1—13 (West 1992)).

The trial court specifically stated that it considered the evidence of defendant's "low functionality" but found that defendant was not mentally retarded. Defendant presented no definitive evidence of his mental retardation. The trial court witnessed defendant make statements during the proceedings. The trial court, therefore, was in the best position to evaluate whether defendant was mentally retarded. (See *People v. Streit* (1991), 142 Ill. 2d 13, 19.) We conclude that this finding was not an abuse of discretion. Furthermore, it appears that the trial court did consider defendant's low functionality in making its sentencing determination.

■ Defendant next argues that the trial court did not properly consider the hardship that his imprisonment would place on his dependents. That defendant's imprisonment would entail *excessive* hardship to his dependents is a mitigating factor under the Code. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3.1(a)(11) (now 730 ILCS 5/5—5— 3.1(a)(11) (West 1992)).) The trial court stated that defendant's "imprisonment, indeed, will entail hardship upon his dependents, and most imprisonment does do exactly that." According to defendant, the trial court has effectively written that mitigating factor out of the statute. We disagree.

We acknowledge that the trial court's statement is somewhat unclear. The trial court could have meant that the hardship to defendant's dependents would not be excessive, since all imprisonment creates some hardship for the prisoner's dependents. On the other hand, the trial court could have meant that it considered the hardship to defendant's dependents as a mitigating factor, but concluded that it did not outweigh the factors supporting a lengthy prison sentence. Either way, the trial court's treatment of this factor was permissible. The existence of a mitigating factor does not obligate the trial court to impose a minimum sentence. *People v. Powell* (1987), 159 Ill. App. 3d 1005, 1011.

■ Defendant also claims that the trial court failed to consider his alcoholism as a mitigating factor. Although alcoholism is not a statutory mitigating factor, in some circumstances it is appropriate for a trial court to consider it in mitigation. (*Smith*, 214 Ill. App. 3d at 339.) We presume, absent evidence to the contrary, that the trial court considered the mitigating evidence before it. (*People v. Phillips* (1992), 226 Ill. App. 3d 878, 891.) In this case, the trial court did consider the evidence of defendant's alcohol abuse. The trial court found that, while the abuse may have contributed to defendant's low func-

tionality, it also suggested that defendant lacked rehabilitative potential. Such a finding is permissible. *People v. Scott* (1992), 225 Ill. App. 3d 938, 941-42.

Viewing the record as a whole, we find that the imposition of an eight-year sentence, which was two years below the maximum extended term, was not a abuse of discretion. See *People v. Munn* (1991), 216 Ill. App. 3d 1058, 1062-63.

■ Next, defendant claims that the trial court improperly credited the State's argument that the quantity of cannabis involved in the offense constituted a factor in aggravation under section 411 of the Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56½, par. 1411(2) (now 720 ILCS 570/411(2) (West 1992))). Defendant points out that the provision on which the State relied is part of the Controlled Substances Act and does not apply to offenses under the Cannabis Control Act. (*People v. Knight* (1985), 133 Ill. App. 3d 248, 257.) However, the trial court recited in detail the factors upon which it relied, and the trial court nowhere mentioned that it considered in aggravation that a large amount of cannabis was involved in the offense. "Absent proof to the contrary, we may presume that the trial judge considered only relevant, material and competent evidence in deciding whether to impose an extended-term sentence." *People v. Nally* (1991), 216 Ill. App. 3d 742, 773.

We note that the trial court did find that defendant's "ability to produce with great alacrity and speed the amount of marijuana requested shows that he was quite seriously involved." The trial court properly determined that this fact undermined defendant's argument that he was "goaded" into committing the offense.

Defendant finally argues that the trial court's finding that defendant had an anti-social personality disorder was contrary to the evidence. Therefore, according to defendant, the trial court improperly relied on this finding in determining his sentence. The trial court mentioned defendant's antisocial personality disorder during its discussion of certain mitigating factors—that the criminal conduct was the result of circumstances likely to recur and that defendant's character and attitudes indicate that he is unlikely to commit another crime—applied to defendant. (Ill. Rev. Stat. 1989, ch. 38, pars. 1005—5—3.1(a)(8), (a)(9) (now 730 ILCS 5/5—5—3.1(a)(8), (a)(9) (West 1992)).) Quoting in part from the 1982 mental health evaluation, the trial court stated that defendant:

> "has a 'pervasive impulsivity' and a 'routine lack of good judgment.'

'Additionally, he has a poor understanding of himself and his responsibilities as an adult. The evaluation states that he may be described as evidencing an anti-social personality disorder.'

Given that, and given his long history of criminality, I find very little basis for rehabilitation or any change in life style that the defendant claims and that the letters on his behalf claim. I am quite convinced that the conduct would be quite likely to recur and to recur quite frequently and unabatedly and that he would likely commit a continuous stream of crimes."

■ The trial court was referring to the presentence report's discussion of the 1982 Lake County Mental Health evaluation of defendant. Defendant points out that Dr. Dunne's 1991 evaluation contradicted this report. Dr. Dunne stated that "[d]espite [defendant's] criminal history, the MMPI-2 does not suggest string [sic] antisocial tendencies." Dr. Dunne also stated, however, that "[t]he testing does indicate a tendency toward impulsiveness, which combined with his difficulties with abstract thinking, may contribute to his taking action without regard for its consequences." This statement is not inconsistent with either the 1982 evaluation or the trial court's finding. The trial court's reliance on the 1982 evaluation, therefore, was not entirely misplaced.

In addition, even if the trial court did misstate the evidence, the trial court's finding was not unreasonable. Considering defendant's history of continuous criminal violations, the trial court's finding that the defendant would likely repeat his criminal conduct or commit future crimes was not an abuse of discretion. In reviewing a sentence, we will consider the record as a whole rather than focusing on a few words or statements. *People v. Bolden* (1991), 210 Ill. App. 3d 940, 948.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

BOWMAN and COLWELL, JJ., concur.