NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (4th) 190876-U

NO. 4-19-0876

IN THE APPELLATE COURT

FILED
September 23, 2021
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| KEITH CHOUNARD, | ) | No. 16CF1202 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

JUSTICE HOLDER WHITE delivered the judgment of the court.
Justices DeArmond and Harris concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed, concluding the trial court did not abuse its discretion in sentencing defendant.

¶ 2       Defendant, Keith Chounard, appeals from the judgment of the trial court of Champaign County revoking his probation for the offense of domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2014)) and sentencing him to three years' imprisonment. Defendant asserts the trial court erred by (1) failing to give proper weight to the mitigating factor of excessive hardship to his dependents and (2) considering his children as an aggravating factor when sentencing defendant. For the following reasons, we affirm.

¶ 3                                  I. BACKGROUND

¶ 4          In October 2016, defendant pleaded guilty to domestic battery, a Class 4 felony based on his prior domestic battery conviction in Coles County case No. 08-CF-132. See 720 ILCS 5/12-3.2(a)(2), (b) (West 2014). According to the factual basis, defendant "grabbed the victim by her chin and neck and push[ed] her head into a brick exterior of the house." The State identified the victim as Dana Chounard, an ex-wife of defendant.

¶ 5          Pursuant to a plea agreement, the trial court sentenced defendant to 24 months' probation and required defendant to (1) obtain an evaluation for alcohol and drug abuse and complete recommended treatment, (2) attend sobriety-based self-help group meetings, and (3) enroll in a Partner Abuse Intervention program.

¶ 6          In May 2018, the State filed a petition to revoke defendant's probation. The petition alleged defendant failed to (1) appear at scheduled probation meetings, (2) advise his probation office of his change of residence, (3) obtain a substance abuse evaluation and complete recommended treatment, (4) provide documentation of attending sobriety-based self-help group meetings, and (5) enroll in a Partner Abuse Intervention program.

¶ 7          In May 2018, the trial court issued a warrant for defendant's arrest based on his alleged probation violations. On August 1, 2019, defendant was arrested pursuant to the warrant. Defendant appeared in court and was provided a copy of the petition to revoke his probation. On August 12, 2019, defendant appeared in court and admitted the allegations in the petition. The court accepted defendant's admission, set the matter for resentencing, and ordered a presentence investigation report (PSI) be prepared.

¶ 8          Defendant reported to the probation officer that he lacked a stable residence over the past three years. Defendant aspired to reside with his ex-wife, Lisa Chounard, and their two daughters, if he received a community-based sentence. Defendant stated he was "slowly

reconciling" with Lisa. According to the PSI, defendant had five children ranging in age from 26 to 7 years old. He was approximately $79,000 in arrears in child support. Defendant reported he was employed full-time as a roofing laborer and lived with his stepson.

¶ 9        On October 8, 2019, the trial court conducted defendant's resentencing hearing. Defendant introduced into evidence a letter from Lisa Chounard. Lisa also testified at the hearing. Lisa had two children with defendant, now ages 16 and 14. She had been married to defendant for 15 years, but the two had been divorced for approximately 6 years. Lisa testified that "since defendant has gotten himself back into treatment," defendant has played a significant role in caring for the girls. According to Lisa, defendant participated in "every aspect that he's missed for the last 10 years basically, everything from waking up with the girls in the morning, watching them get ready for school, fixing them breakfast, watching football games, watching our—both of our daughters go off to their homecoming this year." When asked if a sentence of incarceration would cause a burden to her and her children, Lisa responded, "My girls, yeah." She explained,

> "[Defendant] was lost for a lot of years in alcoholism, being lost just in general, I guess, and so they suffered. *** [F]or the first time in at least 10 years he is there every single day for everything, good, the bad, the stressful, helping with my business I started last year, encouraging. It's just changed the girls tremendously just in a few months."

On cross-examination, Lisa confirmed that she was the named victim in defendant's prior domestic violence conviction. The victim in the instant matter was Dana Chounard, another ex-wife of defendant.

¶ 10      The State presented no evidence and recommended a sentence of three years in the Department of Corrections. The State argued defendant "did absolutely nothing on his probation until he was found in violation of it."

¶ 11      Defense counsel argued defendant's situation had changed where he now had stable housing and had "a family that is relying on him, that is enjoying their father's relatively, compared to his history, new-found sobriety." Defense counsel requested another opportunity for a community-based sentence.

¶ 12      Defendant made a statement in allocution, explaining he now understood he needed the programs to help himself. Defendant thanked the court for ordering him to go to treatment and indicated he could not "defeat the disease of alcoholism alone." He discussed how his family life had become more stable, and he got to see "just how happy [his daughters] ha[d] become just because of [his] presence." He requested another community-based sentence in order to be "present in [his] children and wife's lives, time to prove to [him]self, [his] family, and to the court that [he is] not a lost cause."

¶ 13      In sentencing defendant, the trial court began by stating it "considered the report prepared by court services. I've considered the comments of counsel, the documentation presented on behalf of the defendant, as well as the testimony presented on behalf of the defendant. I've considered the statutory factors in aggravation, as well as the statutory factors in mitigation." As to statutory mitigating factors, the court found that "there really aren't any that apply to this defendant to this type of an offense." In aggravation, the court considered the circumstances surrounding the offense and the history, character, and condition of defendant. The court stated, "What we have here is an individual who talks about his two daughters. Well, he's also brought three other children into this world, a total of five, and he's—arrearage and

child support is in excess of $70,000." The court found "[t]he history, character and condition of the defendant is that he is and has been totally and completely irresponsible." After considering defendant's prior criminal history and deterrence, the court stated the following:

> "[Defendant] has made a mockery out of probation. He has not only proven himself to be irresponsible but, based upon his criminal history and crimes of violence, when he's drunk, he's dangerous. I believe a community-based sentence would be totally inappropriate, deprecate the seriousness of his conduct, would not provide the appropriate deterrent factors for other individuals similarly situated."

The court then resentenced defendant to three years in prison.

¶ 14 On October 28, 2019, defendant filed a motion to reconsider his sentence, arguing the trial court (1) placed too much weight on defendant's prior conduct on probation, (2) did not place enough weight on defendant's substance abuse and defendant's need for treatment, and (3) did not sentence defendant with the goal of returning him to useful citizenship. The court denied defendant's motion to reconsider his sentence.

¶ 15 This appeal followed.

¶ 16 II. ANALYSIS

¶ 17 On appeal, defendant argues the trial court erred by (1) failing to give proper weight to the mitigating factor of excessive hardship to his dependents and (2) considering his children as an aggravating factor when sentencing defendant.

¶ 18 A. Standard of Review

¶ 19 Generally, the imposition of a sentence is within the sound discretion of the trial court. *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8, 973 N.E.2d 459. Accordingly, "there

is a strong presumption that the trial court based its sentencing determination on proper legal reasoning, such that the trial court's sentencing decision is reviewed with great deference." *Id.* "The trial court's determination will not be disturbed absent a showing of abuse of discretion [citations], or unless the trial judge relied on improper factors in imposing the sentence [citation]." *People v. Morgan*, 306 Ill. App. 3d 616, 633, 713 N.E.2d 1203, 1215 (1999).

¶ 20                                 B. Plain Error

¶ 21        Defendant failed to raise his claims of errors in sentencing before the trial court, thus rendering the issues forfeited. *People v. Kitch*, 239 Ill. 2d 452, 460, 942 N.E.2d 1235, 1240 (2011). However, we may consider a forfeited claim where defendant demonstrated plain error occurred. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). To prove plain error, a defendant must first demonstrate a clear or obvious error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565, 870 N.E.2d 403, 411 (2007). If an error occurred, we will only reverse where (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error"; or (2) "the error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.*

¶ 22                            1. *Excessive Hardship*

¶ 23        Defendant argues the trial court erred where it failed to consider the mitigating factor of excessive hardship to his dependents. Specifically, defendant argues he presented evidence of the hardship his incarceration would have on his dependents, which was unrebutted by the State. Thus, defendant contends the trial court erred in finding no statutory mitigating factors applied to his case.

¶ 24    Section 5-5-3.1(a) of the Unified Code (730 ILCS 5/5-5-3.1(a) (West 2018)) lists factors for which the trial court "accord[s] weight in favor of withholding or minimizing a sentence of imprisonment." One of these factors to be considered by the trial court is if "[t]he imprisonment of the defendant would entail excessive hardship to his dependents." 730 ILCS 5/5-5-3.1(a)(11) (West 2018).

¶ 25    It is not necessary for a trial court to "detail precisely for the record the exact thought process undertaken to arrive at the ultimate sentencing decision or articulate its consideration of mitigating factors." *People v. Abrams*, 2015 IL App (1st) 133746, ¶ 32, 47 N.E.3d 295. " 'A trial court is presumed to have considered all of the relevant evidence of mitigation before it.' " *People v. Somers*, 2012 IL App (4th) 110180, ¶ 24, 970 N.E.2d 606 (quoting *People v. Bailey*, 409 Ill. App. 3d 574, 594, 948 N.E.2d 690, 710 (2011)). This presumption will only be rebutted where the record affirmatively reveals otherwise. *People v. Chirchirillo*, 393 Ill. App. 3d 916, 927, 913 N.E.2d 635, 645 (2009). Defendant contends the court's statement, "[a]s to statutory mitigating factors, there really aren't any that apply to this defendant to this type of an offense," is sufficient to rebut the presumption the trial court considered the statutory mitigating factor.

¶ 26    A sentencing court's statement that no statutory factors in mitigation *apply* is different than the trial court did not *consider* a mitigating factor. See *People v. Newbill*, 374 Ill. App. 3d 847, 854, 873 N.E.2d 408, 415 (2007). Prior to sentencing defendant, the trial court stated, "I've considered the statutory factors in aggravation, as well as the statutory factors in mitigation." That the State did not contest defendant's evidence of hardship to his dependents did not require the trial court to accept that evidence. Although Lisa testified defendant's presence had "changed the girls tremendously just in a few months," she also testified that defendant had

not been in his daughters' lives for at least 10 years. Lisa believed defendant's incarceration would "cause a burden" to her daughters, now 16 and 14 years old. However, defendant had not been present for most of the girls' lives. Defendant expressed his interest in "get[ting] to be present with them and not miss their special life moments" while having already missed most of those moments.

¶ 27 We note that most incarceration causes some hardship on those involved in a defendant's life. See *People v. Young*, 250 Ill. App. 3d 55, 65, 619 N.E.2d 851, 858 (1993) (" '[I]mprisonment, indeed, will entail hardship upon [a defendant's] dependents, and most imprisonment does do exactly that.' "). The statutory mitigating factor, however, required the trial court to consider if defendant's incarceration would impose an *excessive* hardship on his dependents. The term "excessive" means "exceeding what is usual, proper, necessary, or normal." Merriam-Webster's Online Dictionary, https://merriam-webster.com/dictionary/excessive (last visited July 19, 2021).

¶ 28 The evidence presented at the resentencing hearing demonstrated defendant had not been present for most of his daughters' lives; only in the few months before resentencing. Further, the evidence showed defendant assumed a minimal or nonexistent role in providing for his children financially. Defendant presented no evidence of financial support, and although hardship "may entail more than just financial support," (*People v. Cunningham*, 2018 IL App (4th) 150395, ¶ 45, 115 N.E.3d 423), defendant presented little evidence of how he provided other types of support. We cannot say it was error for the trial court to have determined defendant's incarceration would not impose *excessive* hardship on his dependents. As we find no error, we need not review defendant's contention for plain error. See *Piatkowski*, 225 Ill. 2d at 565.

¶ 29                                    2. *Children as an Aggravating Factor*

¶ 30        Defendant further argues the trial court erred by considering defendant's children as an aggravating factor. Citing *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 851 (1992), for the proposition "[o]ur law affords constitutional protection to personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education," defendant argues the trial court improperly considered in aggravation his "lifestyle" of fathering five children with three different women.

¶ 31        Assuming defendant's general proposition is correct, that the trial court cannot consider defendant's choice to "procreate *** with multiple women" in aggravation, it is irrelevant to this case as it is clear the trial court did not consider defendant's "lifestyle" as an aggravating factor.

¶ 32        In determining an appropriate sentence, the trial court must consider "the defendant's personal history, including his age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education." *People v. Maldonado*, 240 Ill. App. 3d 470, 486, 608 N.E.2d 499, 509 (1992).

¶ 33        In this case, the trial court stated, "What we have here is an individual who talks of his two daughters. Well, he's also brought three other children into this world, a total of five, and he's—arrearage and child support is in excess of $70,000." The court continued, summarizing its findings as follows: "The history, character and condition of the defendant is that he is and has been totally and completely irresponsible." We find the court's statement was not commenting on defendant's "life style in regards to his choice to procreate, specifically to do so with multiple women," as defendant contends. The court never referenced the children or their mothers in this context. Rather, the court's remarks mirrored its observations that defendant

- 9 -

lacked any degree of responsibility in his personal life, namely the over $70,000 he had failed to pay in child support. Defendant's lack of responsibility was reflective of his general moral character and potential for rehabilitation, which are important considerations in sentencing. See *Maldonado*, 240 Ill. App. 3d at 485-86.

¶ 34　　　　As the trial court properly considered defendant's outstanding child support arrearage of over $70,000 as demonstrative of his general lack of responsibility, we find no error and thus need not conduct plain error review. See *Piatkowski*, 225 Ill. 2d at 565.

¶ 35　　　　　　　　　　C. Ineffective Assistance of Counsel

¶ 36　　　　Alternatively, defendant contends that counsel's failure to preserve his claims concerning the trial court's alleged errors at sentencing constituted ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a defendant must show (1) defense counsel's performance was deficient and (2) the defendant suffered prejudice as a result of counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668 (1984). Because we have concluded the court did not err at sentencing, defendant has failed to show any deficiency in counsel's performance or demonstrate he was prejudiced by counsel's failure to include these issues in a postsentencing motion.

¶ 37　　　　　　　　　　　　III. CONCLUSION

¶ 38　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 39　　　　Affirmed.