NOTICE

Decision filed 06/14/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 200271-U

NO. 5-20-0271

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 18-CF-460 |
| | ) | |
| PERICE L. LADD, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Presiding Justice Boie and Justice Barberis concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not abuse its discretion in sentencing the defendant to 30 years of imprisonment for a Class X felony conviction.

¶ 2    A jury found the defendant, Perice L. Ladd, guilty of residential arson (720 ILCS 5/20-1(b) (West 2018)). The defendant was sentenced to 30 years at the Illinois Department of Corrections and 3 years of mandatory supervised release. On appeal, the defendant claims that the circuit court abused its discretion by sentencing the defendant to the maximum available sentence where it failed to consider factors in mitigation and considered improper factors in aggravation. For the following reasons, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4      On October 9, 2018, the defendant was charged with residential arson in violation of section 20-1(b) of the Criminal Code of 2012 (720 ILCS 5/20-1(b) (West 2018)). Equiton Wilks was named as a codefendant and additionally charged with residential arson. Wilks's charges were dismissed prior to trial.

¶ 5      The jury trial began on June 11, 2019. The State called Tosha Henry, the defendant's ex-girlfriend, as their first witness. Tosha rented a mobile home in Mt. Vernon, Illinois. She testified that on October 5, 2018, her home burned down.

¶ 6      Tosha testified to the events that occurred prior to the house fire. On October 5, 2018, at approximately 4:40 a.m., Tosha went to a bar called the Industrial with the defendant and the defendant's brother, Timmothy Ladd. At the bar, Tosha upset the defendant because she misspoke and called the defendant "Peanut," a nickname for a friend. Timmothy dropped the defendant and Tosha off at Tosha's home in time for Tosha to wake up her daughter for school. While her daughter was getting ready for school, Tosha and the defendant were waiting in Tosha's bedroom. Tosha received a phone call from "Peanut," which she did not answer. Tosha testified that the defendant became angry and "slapped my phone out of my hand." In response, she left the bedroom and then she walked her daughter to school. At that time, the defendant's cousin, Wilks, was asleep on her couch in the front room, and no one else was at her home.

¶ 7      On the way to school, Tosha met her daughter's uncle, and he took Tosha's daughter the rest of the way to school. Tosha turned around and walked back home. She saw the defendant and Wilks driving away. She returned home at approximately 7:50 a.m.

¶ 8    Tosha attempted to go inside of her home, but she could not see anything because her home was filled with smoke. She was able to let her dog out. Tosha could not call 911 because the defendant had "smacked the phone out of [her] hand and took it." Tosha asked her neighbor, Billy, to call the police and she ran to her aunt's house across the street for help.

¶ 9    Tosha testified that she had security cameras installed on the outside of her home. The State played security camera footage for the jury, which was admitted into evidence as the State's Exhibit 1. Tosha identified the defendant on the video. He had removed a camera from Tosha's front porch after she left to take her daughter to school. Tosha additionally testified that after the fire, the defendant told her that "he's sorry for doing it, and that he's going to get me and my kids a place to live for taking their home away." Tosha lost all of her personal possessions in the fire.

¶ 10   Brandon Emrich, a firefighter with the Mt. Vernon Fire Department, testified. Emrich was a director of the Southern Zone Chapter of Arson Investigators and trained other investigators in Illinois. He was also a certified arson investigator through the International Association of Arson Investigators. The circuit court found that Emrich was qualified to testify as an expert in the field of arson investigation.

¶ 11   On October 5, 2018, Emrich assisted in extinguishing the fire at Tosha's residence. Emrich determined that the origin of the fire was in Tosha's bedroom. A king mattress was "folded over on itself ***, like a sandwich." The mattress was between two twin bedframes. Emrich believed that the bedframe was placed to grow the fire. He testified that there was a hole in the roof directly above where the bed was located indicative of "an

3

increased fuel load present below it." After the fire was extinguished, he spoke to Tosha about what had occurred. Tosha indicated that the bed had not been stacked as he described before she left home that morning.

¶ 12   Emrich was unaware of whether an accelerant was used to start the fire. The K9 unit of the Office of the State Fire Marshal attempted to detect any ignitable liquids. The damage to the floor, however, was too significant that it posed a danger to the K9 unit, and the examination was not completed. Emrich additionally explained that a fire doubles in size every minute once an open flame has ignited and the "box spring could have consumed itself and spread to other things within three to four minutes."

¶ 13   Emrich determined that the fire had not been caused by an electrical appliance. The television was on the floor of the living room by the recording device for the security cameras. Other possessions in the living room were knocked over or thrown around and Emrich determined that they were "disrupted prior to the fire."

¶ 14   Based on the disarray of the bedroom and the stacking of materials, Emrich concluded that the fire had not been caused by an unattended cigarette. Tosha told Emrich that she took her cigarette with her when she walked her daughter to school. He testified that "a cigarette doesn't stack itself underneath mattresses." Emrich opined that the fire had been intentionally set after eliminating any accidental or natural causes of the fire.

¶ 15   Billy Hails, Tosha's neighbor, testified that he saw Tosha on October 5, 2018, when she was walking her daughter to school. After Tosha left, a man came out of her house to look in Tosha's direction and then he went back inside. Another man came out of the house

4

with a suitcase. He waited by the car and was staring at the roof of Tosha's home. Both men drove away together.

¶ 16    Justin Haney was a detective in the investigation division with the Mt. Vernon Police Department on October 5, 2018. He testified that he responded to the arson investigation at Tosha's residence. Haney spoke with Tosha, and she identified the defendant. After the initial conversation with Tosha, Haney had to contact Tosha through a relative because the defendant took Tosha's phone. Haney testified that after he interviewed Tosha, he located the defendant and Wilks. The defendant was cooperative and agreed to go to the police department. Wilks refused to cooperate and was handcuffed and taken to the police department.

¶ 17    During Haney's interview with the defendant at the police department, the defendant initially denied going to the Industrial with Tosha. He eventually admitted to leaving the Industrial with Tosha and took her home, but claimed he never went inside of her home. The defendant's interview was recorded. The State published the interview to the jury, and it was admitted as the State's Exhibit 3.

¶ 18    Jeremy Reichert, a detective sergeant with the Mt. Vernon Police Department, testified. He had obtained the video footage from Tosha's surveillance system. The video footage depicted the defendant tampering with the video cameras after Tosha left to take her daughter to school.

¶ 19    Equiton Wilks, the defendant's cousin, testified to the events that had occurred on October 5, 2018. Wilks testified that he had slept on Tosha's couch the evening before the fire. He woke up to the defendant saying, "hey, get up, let's go." Wilks attempted to go

5

back to sleep, and the defendant said, "the house is on fire." Wilks testified that he did not believe the defendant and went back to sleep. The defendant then told Wilks to "pack your sh***." Wilks testified that he got up and folded the blanket that he was using and then grabbed his video game console and unplugged it from the television set that was on the wall. Wilks did not move the television when he was packing. He then went outside to get into his car. Wilks realized that he did not have his house keys and went back inside Tosha's home to search for them. When he went back inside, he smelled smoke and left without his keys. Wilks testified that he left with the defendant and while they were driving away the defendant said, "That bi***. She thinks I'm a game. I'm not a game."

¶ 20    Wilks also testified that the evening before the fire he had heard Tosha say that she was going to burn her house down. Tosha made the statement to her children because they were being "disrespectful." She made a comment that she had "brought you into this world, I'll take you out" as well as saying that "I'll burn this mother f*** down if I want to." Wilks did not take Tosha's statement seriously.

¶ 21    Wilks testified that he was arrested at the defendant's mother's house. He was charged with residential arson. The State dismissed the charges against Wilks on June 10, 2019, three days before he testified at trial. Wilks was questioned by the defense on whether he made a deal with the State. Wilks responded that he had cooperated with the police based on his lawyer's advice and he hoped that he would be released. He indicated that there was no deal in place. Wilks admitted that he told the police, "if you guys want a witness, I'll be your witness. Just get me out of here."

6

¶ 22   The State rested after Wilks's testimony. The defense moved for a directed verdict. The circuit court denied the motion for a directed verdict.

¶ 23   The defense called Tosha Henry to testify about the cause of the fire inside of her home. Tosha testified that she smoked inside of her house and the defendant smoked inside as well. Tosha additionally testified to the argument that she had with the defendant before she took her daughter to school. The argument took place in her bedroom and lasted approximately five minutes. When she left, Wilks was asleep on the couch.

¶ 24   The defendant's brother, Timmothy Ladd, testified that he had taken the defendant and Tosha to the Industrial on October 5, 2018. The defendant and Tosha were both drinking alcohol until 7 a.m. Timmothy drove them home and they were both in "good spirits" when he left. Timmothy had agreed to return to take Tosha's daughter for school. When he returned to Tosha's, he saw that her house was on fire.

¶ 25   The defendant chose not to testify, and the defense rested. After the parties discussed jury instructions, the parties presented their closing statements. The jury returned a verdict of guilty for the charge of residential arson.

¶ 26   The circuit court held the sentencing hearing on October 10, 2019. The defendant was sentenced to a Class X felony due to prior convictions. The defendant was informed that the sentencing range for a Class X felony was from 6 to 30 years in the Illinois Department of Corrections followed by 3 years of mandatory supervised release.

¶ 27   Brandon Emrich testified for the State regarding a financial impact report from the Mt. Vernon Fire Department. Emrich testified that the fire department was seeking $2415.28 in restitution for personnel and equipment used during the fire that occurred at

7

Tosha's residence. Emrich testified that the estimated property damage to the mobile home was $30,000 and the personal property damage was $20,000 for a total of $50,000. There was additional damage of $500 to a car that was parked near the fire.

¶ 28   The State then argued that the circuit court should impose the maximum sentence based on factors in aggravation pursuant to sections 5-5-3.2(a)(1), (3), and (7) of the Unified Code of Corrections (730 ILCS 5/5-5-3.2(a)(1), (3), (7) (West 2018)). The defendant had a criminal history, which included People v. Ladd, No. 99-CF-491 (Cir. Ct. Jefferson County) where the defendant pled guilty to home invasion; People v. Ladd, No. 10-CF-575 (Cir. Ct. Jefferson County) where the defendant pled guilty to domestic battery; and People v. Ladd, No. 14-CF-142 (Cir. Ct. Jefferson County) where the defendant pled guilty to domestic battery with allegations that he had strangled the victim. The State additionally argued that the defendant had another misdemeanor domestic battery on his criminal record included in the presentence investigation (PSI).

¶ 29   According to the PSI, the defendant identified himself as a "heavy drinker" and denied having mental health issues. The defendant reported that he was diagnosed with mental health conditions as a child but did not know the diagnosis. He did not take medications and reported that he had no problems.

¶ 30   The State argued that the defendant's conduct threatened serious harm. The defendant had set fire to the building while Wilks was inside of the building, Tosha was returning home, and her dog was left inside. The State additionally argued that the sentence was necessary to deter others from committing the same crime. The defendant had not shown remorse and had sent a letter to the State blaming the State for hiding the truth.  The

8

State argued that the defendant had a history of domestic violence, and his behavior was becoming increasingly more violent. The State requested the maximum sentence of 30 years, restitution, and a $15,000 fine plus costs.

¶ 31 The defendant argued that his sentence should be minimized based on factors in mitigation pursuant to sections 5-5-3.1(a)(1), (2), and (4) of the Unified Code of Corrections (730 ILCS 5/5-5-3.1(a)(1), (2), (4) (West 2018)). The defendant claimed that his conduct did not cause or threaten serious physical harm to Wilks because the defendant made Wilks leave the house. The defendant additionally claimed that his actions indicated that he did not contemplate causing or threatening serious physical harm to another. The defendant argued to minimize the weight of his criminal history which included a crime that was committed when the defendant was a 16-year-old juvenile. The defendant additionally argued that he had a serious drinking problem which excused or justified his conduct. The defendant had issues with interpersonal problems because he was an alcoholic. The defense requested the minimum sentence of six years.

¶ 32 The defendant made a statement in allocution. He acknowledged that he had a problem with alcohol and apologized for what had happened.

¶ 33 The circuit court considered the presentence investigation report, the testimony by Emrich, and the evidence presented during the jury trial. The circuit court considered the aggravating factors and found that the fact that the defendant's conduct caused or threatened serious harm was implicit in the charge of residential arson. The defendant had knowingly damaged a building used as a dwelling place. The circuit court did not consider this as an aggravating factor. The circuit court considered the defendant's history of prior

9

delinquency or criminal activity. The defendant had a history of serious convictions showing violence. The circuit court also considered that the sentence was necessary to deter others from committing the same crime.

¶ 34   The circuit court considered the mitigating factors presented by the defense. The circuit court found that the defendant's arguments for mitigation were unpersuasive. The defendant had threatened serious physical harm to Wilks even though the defendant had him leave the premises. The circuit court considered Emrich's testimony that the average fire doubles in size every minute if it has enough oxygen and determined that Wilks was placed in "grave danger." The circuit court found that the defendant's argument that he had not contemplated that his criminal conduct would cause or threaten serious physical harm was insufficient to consider as a mitigating factor. The circuit court additionally rejected the defendant's argument where he blamed alcohol for his behavior. The circuit court did not find any mitigating factors to reduce the defendant's sentence.

¶ 35   The circuit court commented that mobile homes burn quickly, and the danger and efficiency of the fire was worse than if the fire was in a "stick-built house." The circuit court considered that the defendant's actions to remove the video cameras indicated that the defendant was cognizant enough to attempt to cover his crime. That action indicated considerable criminal intent and knowledge. The circuit court additionally stated:

> "I don't know how residential arson could really get any worse. If somebody had been killed, you would be here for murder. And you are not, thank God, because that would be completely tragic. It's tragic enough as it is. You know, you can't have people burning other people's houses down when they get mad at them. We just don't do that."

10

¶ 36 The circuit court sentenced the defendant to the maximum term of 30 years in the Illinois Department of Corrections served at day-for-day credit, 3 years of mandatory supervised release, and imposed restitution consisting of $2415.28 to the Mt. Vernon Fire Department, $30,000 to the owner of the house, $20,000 to the tenant, Tosha Henry, and $500 to the owner of the damaged car. The defendant was additionally ordered to pay a $10,000 fine plus costs.

¶ 37 The defendant filed a posttrial motion, and the circuit court denied the defendant's posttrial motion for a new trial. The defendant additionally filed a motion to reconsider the sentence. During the motion hearing, the circuit court explained that it did not find factors in mitigation and commented:

> "Factors number one and two, I would certainly not find factor[s] in mitigation that the criminal conduct of burning somebody's house down; particularly, when it was started with somebody in it, neither threatened or caused serious physical harm. Because any time you have a structure fire and the fire department is called, you are putting every one of the firefighters in danger, and so not to mention other things that can happen when a fire is started in a city such as this. So I would never—well, I wouldn't say never. But in this case, I am not going to make that finding."

The circuit court additionally reiterated that no evidence was presented on what the defendant had contemplated when he started the fire. The defendant denied starting the fire. The circuit court denied the defendant's claim that his sentence was excessive but granted the defendant's request to reconsider restitution. The court vacated the restitution order and set the matter for a new restitution hearing. The hearing was held on August 27, 2020. At that time, the parties indicated that they had reached an agreement. The Mt. Vernon Fire Department received $2415.28 and Tosha received $734.72 from the

11

defendant's bond. The parties agreed that no additional restitution would be owed by the defendant and a restitution order was entered. This appeal followed.

¶ 38                                    II. ANALYSIS

¶ 39    On appeal, the defendant claims that the circuit court abused its discretion by sentencing the defendant to the maximum sentence, 30 years, to the Illinois Department of Corrections. The defendant argues that the circuit court ignored mitigating evidence and considered improper factors in aggravation.

¶ 40    A circuit court's sentencing decision is entitled to great deference and will not be altered on appeal absent an abuse of discretion. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). The circuit court is given great deference because "the trial court is in the best position to consider the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 15. A sentence will be deemed an abuse of discretion where the sentence is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *Alexander*, 239 Ill. 2d at 212.

¶ 41    The statutory factors in mitigation and aggravation must be carefully considered by the circuit court. *People v. Center*, 198 Ill. App. 3d 1025, 1033 (1990). The circuit court, however, is not required to recite and assign a value to each factor considered. *People v. Pina*, 2019 IL App (4th) 170614, ¶ 19. There is a presumption that the circuit court considers all mitigating evidence presented. *People v. Abrams*, 2015 IL App (1st) 133746, ¶ 33. "The reviewing court must not substitute its judgment for that of the trial court merely

12

because it would have weighed these factors differently." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000).

¶ 42 The reviewing court considers the record as a whole when determining the correctness of a sentence and should not focus on a few words or statements of the circuit court. *People v. Reed*, 376 Ill. App. 3d 121, 128 (2007). The defendant must show that the circuit court relied on an improper fact when imposing the sentence to obtain a remand for resentencing. *Reed*, 376 Ill. App. 3d at 128. "An isolated remark made in passing, even though improper, does not necessarily require that defendant be resentenced." (Internal quotation marks omitted.) *Reed*, 376 Ill. App. 3d at 128.

¶ 43 The defendant was convicted of residential arson. 720 ILCS 5/20-1(b) (West 2018). The defendant acknowledges that due to his criminal history, the circuit court was required to sentence him as a Class X offender. A Class X felony carries a sentence that is "not less than 6 years and not more than 30 years." 730 ILCS 5/5-4.5-25(a) (West 2018). The circuit court's 30-year sentence is within the statutory sentencing range and, therefore, presumed proper. *Etherton*, 2017 IL App (5th) 140427, ¶ 30.

¶ 44 The defendant claims that the circuit court improperly ignored mitigating factors that the defendant's conduct neither caused nor threatened serious physical harm to another and that the defendant did not contemplate that his criminal conduct would cause or threatened serious physical harm to another. See 730 ILCS 5/5-5-3.1(a)(1), (2) (West 2018). The defendant additionally claims that the circuit court made improper comments that mobile homes burn quickly and are more dangerous than fires in a "stick-built house,"

13

and that "any time you have a structure fire and the fire department is called, you are putting every one of the firefighters in danger."

¶ 45    The circuit court considered the mitigating factors and did not find the defendant's arguments persuasive. The defendant has not shown that either remark by the circuit court requires remand. The court relied on Emrich's testimony that the average fire doubles in size every minute if it has enough oxygen. The defendant set the fire while Wilks was asleep inside the home. Wilks was initially unaware of the fire and noticed smoke while he searched for his keys inside of the home. Wilks was placed in serious danger by the defendant's actions.

¶ 46    The circuit court considered the defendant's argument in mitigation that he had not contemplated that his criminal conduct would cause or threaten serious physical harm to another. The defendant denied being inside of the victim's home after returning from the Industrial in his statement to the police. No evidence was presented regarding what the defendant had contemplated prior to setting the fire.

¶ 47    The defendant additionally argues that the defendant's alcohol addiction should have been considered in mitigation. "Although alcoholism is not a statutory mitigating factor, in some circumstances it is appropriate for a trial court to consider it in mitigation." *People v. Young*, 250 Ill. App. 3d 55, 65 (1993). In *Young*, the PSI reflected that the defendant had " 'an irregular thought process' " and a psychiatric evaluation found " 'neurological damage stemming from his chronic abuse of alcohol and drugs.' " *Young*, 250 Ill. App. 3d at 59. The trial court in *Young* considered that the defendant's alcohol

14

abuse may have contributed to his low functionality, and it also suggested that the defendant had low potential for rehabilitation. *Young*, 250 Ill. App. 3d at 66.

¶ 48    The defendant acknowledges that alcoholism is not a statutory factor that the circuit court was required to consider. The defendant identified himself as a heavy drinker according to the PSI reviewed by the circuit court and in the defendant's statement of allocution. The defendant did not have any known mental health issues and no other evidence was presented regarding the severity of the defendant's alcoholism. The circuit court exercised its discretion when it chose not to consider alcohol abuse as a mitigating factor.

¶ 49    The circuit court did not abuse its discretion where it considered the factors in mitigation and determined that the defendant's arguments were unpersuasive. The circuit court also explicitly stated that it was not going to consider a factor in aggravation that the defendant's conduct caused or threatened serious harm. See 730 ILCS 5/5-5-3.2(a)(1) (West 2018).

¶ 50    The record shows that the circuit court considered the particular circumstances of the defendant's case during the sentencing hearing and considered the defendant's criminal history. The PSI revealed that the defendant had a history with domestic violence including felony convictions for aggravated domestic battery and a domestic battery with a prior conviction. The defendant had become increasingly more violent. The circuit court considered the violent nature of the defendant's convictions and found that it did not know how residential arson "could really get any worse." The defendant had completely destroyed the victim's home, all of her personal belongings, took away a place for her

15

children to live, and her dog was left inside of the burning mobile home. The defendant also removed the video cameras attached to the mobile home which indicated that he was cognizant of his actions and had attempted to cover up his crime.

¶ 51    We presume that the circuit court considered all of the mitigating information, without evidence to the contrary. See *Abrams*, 2015 IL App (1st) 133746, ¶ 33. The trial court did not abuse its discretion where the defendant was sentenced within the statutory range for a Class X felony.

¶ 52                                   III. CONCLUSION

¶ 53    For the forgoing reasons, we affirm the judgment of the circuit court of Jefferson County.


¶ 54    Affirmed.