NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 200331-U

NO. 4-20-0331

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 13, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| KEITH LEONARD SHINER, | ) | No. 17CF1240 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

_____

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Knecht and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the trial court did not abuse its discretion in
            sentencing defendant to 10 years in prison.

¶ 2    In January 2020, defendant was convicted of aggravated driving under the

influence of alcohol (DUI) resulting in a fatality (625 ILCS 5/11-501(a)(2), (d)(1)(F) (West

2016)). The trial court sentenced him to 10 years in prison. Defendant filed a motion to

reconsider his sentence, which the court denied.

¶ 3    On appeal, defendant argues his sentence is excessive. We affirm.

¶ 4                          I. BACKGROUND

¶ 5    In November 2017, the State charged defendant by information with two counts

of aggravated DUI resulting in great bodily harm (625 ILCS 5/11-501(d)(1)(C) (West 2016))

(counts I and II) and two counts of aggravated DUI, third offense, with a blood alcohol

concentration (BAC) of 0.16 or greater (625 ILCS 5/11-501(d)(1)(A), (d)(2)(B) (West 2016))

(counts III and IV). The charges stemmed from a motor vehicle accident that resulted in great bodily harm to Robert McKinney.

¶ 6    In December 2017, defendant was released on a personal recognizance bond, with the conditions defendant must (1) wear a secure continuous remote alcohol monitoring device (SCRAM), (2) refrain from using alcohol, and (3) obtain a substance abuse evaluation and attend any recommended treatment. In May 2018, defendant pleaded guilty to one count of aggravated DUI resulting in great bodily harm. The trial court accepted defendant's plea, ordered a presentence investigation report (PSI), and set the matter for sentencing. Defendant then requested the SCRAM be removed due to financial hardship associated with paying the fees. The trial court granted defendant's request and ordered he submit to weekly random drug and alcohol screenings. Defendant's screenings were later reduced to every other week and then at the discretion of pretrial services.

¶ 7    On July 12, 2018, Robert McKinney passed away because of the injuries he sustained in the accident. The State filed a motion to continue, stating it intended to file charges of (1) aggravated DUI resulting in a fatality with a BAC of 0.08 or more (625 ILCS 5/11-501(a)(1), (d)(1)(F) (West 2016)) (count V) and (2) aggravated DUI resulting in a fatality while under the influence of any amount of alcohol (625 ILCS 5/11-501(a)(2), (d)(1)(F) (West 2016)) (count VI). A grand jury indicted defendant in November 2018.

¶ 8          A. Bench Trial

¶ 9    On January 22, 2020, at defendant's bench trial, Sergeant Shadd Gordon of the Illinois State Police testified he responded to a vehicle accident on Interstate 55 on November 12, 2017. Dispatch reported a pickup truck traveling southbound in the northbound lanes at a high rate of speed. There was a large debris field, and a pickup truck was rolled over on its side in the

right ditch. Gordon observed the rear end of a Corvette in the median. The driver of the pickup truck advised Gordon he was "fine" though Gordon did not see the man at that point. The driver of the Corvette was "in and out of consciousness" and had a large laceration on the top of his head. Gordon learned the Corvette was registered to Bobbie McKinney, and after regaining consciousness, the driver was able to confirm he was McKinney by nodding. The fire department extracted McKinney from the Corvette. Gordon believed the driver of the truck was also extracted, but he was not present for the extraction. Both drivers were taken to the hospital. At the hospital, Gordon made contact with the driver of the truck, who he identified as defendant.

¶ 10        Ross Drennan, a trooper with the Illinois State Police, testified on November 12, 2017, he responded to the scene of the accident. The driver of the pickup truck, who he identified as defendant, was "talkative and stated that he was okay." The driver of the Corvette "appeared to be severely injured." Drennan identified the driver of the pickup truck as defendant. At the hospital, Drennan made contact with McKinney, who was able to answer questions but was confused. Drennan also spoke with defendant, who was "talkative and friendly." Defendant informed Drennan he had attended a fundraiser and he had consumed "eight Budweiser red aluminum bottles." Drennan observed defendant's eyes were droopy, bloodshot, and watery and there was a strong odor of alcohol on his breath. Defendant did not appear to be aware he had been driving southbound in the northbound lanes and could not recall very much about the accident. Drennan conducted a horizontal gaze nystagmus test and placed defendant under arrest for DUI.

¶ 11        Both Drennan and Gordon testified as to defendant's BAC results, but defendant objected for failure to lay a proper foundation, and the trial court sustained the objection.

¶ 12        Dr. Stephanie Powers testified as an expert in forensic pathology. She is an assistant medical examiner at the Cook County Medical Examiner's Office. Powers conducted the postmortem examination of McKinney. The examination of McKinney was external because, "[g]iven the history of the circumstances surrounding the death *** it was determined that an external examination with subsequent medical record review should suffice in being able to determine cause and manner of death." After reviewing McKinney's medical records, the Illinois State Police traffic report, and her own postmortem examination, Powers determined McKinney's cause of death was "[c]omplications of multiple injuries due to motor vehicle collision with a manner of accident."

¶ 13        Sharon Ware, McKinney's daughter, testified as to her father's condition before and after the accident. McKinney spent three weeks in the hospital trauma center before he was transferred to a nursing facility. McKinney's condition deteriorated, and he returned to the trauma center. Ware testified he was transferred to a specialty hospital, where he resided from February 2018 to April 2018. He was released to Ware's care. Ware testified McKinney required around-the-clock care. McKinney entered hospice care where he remained until his death in July 2018.

¶ 14        Jennifer Greer, a registered nurse, testified she treated McKinney when he arrived at the hospital. Greer observed an "obvious" laceration on his head and reported McKinney was alert but confused. From the time of McKinney's arrival in the emergency room, his condition deteriorated.

¶ 15        Defendant moved for a directed verdict at the close of the State's evidence, which the trial court denied. Defendant did not present any evidence.

¶ 16        The trial court found defendant guilty of count VI, aggravated DUI resulting in a fatality while under the influence of any amount of alcohol. The court found defendant not guilty of count V, because the State failed to lay a sufficient foundation for its Breathalyzer evidence.

¶ 17        Defendant filed a motion for a new trial, arguing the State failed to prove defendant guilty beyond a reasonable doubt and the trial court erred by denying his motion for a directed verdict. The court denied defendant's motion for a new trial.

¶ 18                          B. Sentencing

¶ 19                    1. *Presentence Investigation Reports*

¶ 20        The matter proceeded to sentencing on June 24, 2020. The trial court reviewed a PSI from defendant's original guilty plea dated October 24, 2018, and an updated PSI dated June 17, 2020. The PSIs showed defendant had two prior misdemeanor DUI convictions in 1992 and 1999. Regarding his family history, the updated PSI reported defendant had been the primary caregiver for his daughter for the past 10 years, although his ex-wife "played a role in raising their daughter." Defendant provided a consistent work history and had been employed at a paving business for over 10 years.

¶ 21        According to the PSIs, defendant has type one diabetes and had developed end stage renal disease. He had received a donor kidney and pancreas. Defendant takes antirejection therapy medications which suppress his immune system and requires " 'daily medications, monthly blood tests, and regular physician follow-up.' " In addition, defendant had been diagnosed with hypothyroidism, hypertension, diabetic retinopathy of both eyes, and hyperlipidemia, and has recommendations to receive cataract surgery " 'in the near future.' "

¶ 22        Defendant reported he has consumed alcohol since he was 17 years old. He stated he "drank a lot in his twenties" but describes his use over the past 10 years as "occasional." After

defendant's arrest, he underwent a substance abuse evaluation at Chestnut Health Systems and was diagnosed with "alcohol use disorder, severe" and successfully completed an intensive outpatient treatment program and subsequent continuing care program. Both PSI reports indicated defendant had a BAC of 0.254 from a blood draw upon admission to the hospital and a BAC of 0.165 from a breath test two hours later.

¶ 23                             2. *Sentencing Hearing*

¶ 24        Neither party requested any additions or corrections to the PSIs, and the State presented no aggravating evidence beyond what was included in the PSIs.

¶ 25        Defendant presented to the trial court nine letters, including (1) references from his ex-wife, former father-in-law, employer, pastors, and friends; (2) a letter from Chestnut Health Systems briefly reporting on defendant's treatment history and negative substance screens; and (3) a letter from defendant's nephrologist, Dr. Robert Bruha. In his letter, Dr. Bruha reported defendant's immune system is "considerably weaker" than that of a healthy person and defendant would be at "high risk for severe infection and complications from COVID-19 viral infection (including possibly death)."

¶ 26        Sandra Rodriguez, a minister at Christian Faith Center, testified defendant attended church and participated in a faith-based addiction recovery program she directs called Celebrate Recovery. Rodriguez testified defendant was faithful in attending Celebrate Recovery every week he could and was a regular attendant at church services. Defendant was an active volunteer with the church and Rodriguez described him as having a "good heart."

¶ 27        Kaylee Shiner, defendant's daughter, testified she was 18 years old and lived with defendant prior to his incarceration. Defendant's incarceration had caused "strain" for her. Kaylee testified defendant had maintained their home, completed needed repairs, and she has had

to assume responsibility for the bills. Defendant played an active role in her life, and Kaylee described defendant as honest and hard working. She testified the accident was a surprise because defendant had "never been much of a drinker." Kaylee stated, as to his drinking, defendant had "never touched anything since that night, and I don't think he plans to ever again." She testified if defendant was incarcerated long term, she would need to figure out a different living situation.

¶ 28    The State recommended 10 years in the Illinois Department of Corrections (DOC). Defense counsel argued a long-term sentence was not necessary in light of the mitigating evidence.

¶ 29    Defendant gave a statement in allocution. He expressed his remorse for McKinney's death. Defendant also noted he did not want to burden DOC with the high cost of his medical care.

¶ 30    The trial court stated it had reviewed both PSIs. The court noted, to impose a sentence other than a prison sentence, it would need to find extraordinary circumstances existed. The court determined that "there's nothing in this case that would even approach *** the finding of extraordinary circumstances" and a sentence to DOC was necessary. The court also reviewed the letters submitted by defendant, defendant's original statement on October 24, 2018, and the alcohol evaluation from January 2018. The court noted defendant's "very good record" on pretrial supervision. The court also stated it "considered all statutory factors in aggravation and mitigation, [and] the recommendations and arguments of each of the parties in this case."

¶ 31    The trial court noted the difficulty with this type of case, as the defendants are "oftentimes very good people that made a horrible decision and cost somebody else their life." The court found of "greater concern" defendant's criminal history containing two prior DUIs. In

mitigation, the court acknowledged that defendant had "extensive medical issues," was a good father, a hard worker, and had completed DUI treatment, attended self-help meetings, "and you indicate and your daughter [had] indicated that she believes—and I believe her—that you're not going to drink again."

¶ 32        The trial court stated there were statutory factors in aggravation and mitigation and it would discuss "one or two [of] them." As to whether the circumstances were unlikely to reoccur, the court stated, "I think if you don't drink again in the future that's a—that's a finding that the Court could make." However, the court also noted it's "questionable" whether defendant would reoffend where he had two prior DUIs. The court then remarked, "There are, as I've stated, other factors in mitigation all of which I've considered." In aggravation, the court noted defendant's conduct caused or threatened serious harm, but that factor was inherent in the offense. Defendant had two prior DUIs, which the court stated were "extremely aggravating." The court believed deterrence was a factor where "even good people commit horrific offenses based upon bad judgment calls." A sentence of probation would "deprecate the seriousness of this offense and would be inconsistent with the ends of justice." Further, the court found imprisonment was necessary for the protection of the public.

¶ 33        The court determined that, as this was defendant's third DUI, a lengthy sentence was necessary and sentenced defendant to 10 years in prison.

¶ 34                          3. *Motion to Reconsider*

¶ 35        Defendant filed a motion to reconsider his sentence, arguing:

"In light of the evidence presented to the Court, the sentence imposed in this case is excessive.

"*** In sentencing the defendant, the Court failed to follow Article I, Section [11] of the Illinois Constitution, which states as follows: All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship."

¶ 36    At the hearing on defendant's motion to reconsider, defense counsel stated:

"Your Honor, I would prefer to basically just stand on the motion and argue briefly that the ten years imposed by the Court was excessive in light of the fact that he had no prior felony record as well as after the completed treatment and was, you know, otherwise a model citizen."

The trial court determined considering the evidence presented and factors considered by the court, the 10-year sentence was appropriate. The court denied defendant's motion to reconsider his sentence.

¶ 37    This appeal followed.

¶ 38                                    II. ANALYSIS

¶ 39    On appeal, defendant argues his 10-year sentence is excessive because the trial court "failed to balance the mitigating evidence against the aggravating evidence." Specifically, defendant argues the court "placed entirely too much emphasis on [defendant's] meager criminal history" and failed to give weight to mitigating evidence. The State contends defendant has forfeited his claim the trial court failed to give weight to the mitigating evidence because defendant failed to include the claim in his written postsentencing motion. In reply, defendant seeks plain error review on any claim this court finds forfeited.

¶ 40    "In order to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Harvey*,

2018 IL 122325, ¶ 15, 115 N.E.3d 172; see also 730 ILCS 5/5-4.5-50(d) (West 2018) ("A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed with the circuit court clerk within 30 days following the imposition of sentence."). Defendant sets forth multiple factors in mitigation he argues are "particularly relevant here." See 730 ILCS 5/5-5-3.1(a)(7), (8), (9), (12), (18) (West 2020). However, defendant failed to include in his motion to reconsider his sentence any claim the trial court failed to weigh these mitigating factors "against the aggravation." Defendant's postsentencing motion raised only generic claims of excessive sentence that did not apprise the court of the specific claims of error defendant raises on appeal. Thus, defendant did not provide the trial court with an opportunity to address his claims of sentencing error and save the delay and expense inherent in an appeal if defendant's claims are meritorious. See *People v. Heider*, 231 Ill. 2d 1, 18, 896 N.E.2d 239, 249 (2008).

¶ 41        Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967) states, "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded" unless the appellant demonstrates plain error. " '[S]entencing errors raised for the first time on appeal are reviewable as plain error if (1) the evidence was closely balanced or (2) the error was sufficiently grave that is deprived the defendant of a fair sentencing hearing.' " *People v. Williams*, 2018 IL App (4th) 150759, ¶ 16, 99 N.E.3d 590 (quoting *People v. Ahlers*, 402 Ill. App. 3d 726, 734, 931 N.E.2d 1249, 1256 (2010)). However, the doctrine of plain error is not a general savings clause to be used to preserve all errors affecting substantial rights not previously brought to the trial court's attention; rather, it is a narrow and limited exception to the general forfeiture rule. *People v. Jackson*, 2020 IL 124112, ¶ 81, 162 N.E.3d 223; see also *People v. Herron*, 215 Ill. 2d 167, 177, 830 N.E.2d 467, 474 (2005). We note defendant here claims only first-prong plain error—

the evidence was so closely balanced because "there was significantly more evidence in mitigation than in aggravation."

¶ 42 In addressing a claim of plain error, we first determine whether error occurred at all because "without error, there can be no plain error." (Internal quotation marks omitted.) *People v. Hood*, 2016 IL 118581, ¶ 18, 67 N.E.3d 213. Accordingly, we address below whether any of the issues defendant raises constituted clear or obvious error.

¶ 43 The trial court has broad discretion in imposing a sentence. *People v. Patterson*, 217 Ill. 2d 407, 448, 841 N.E.2d 889, 912 (2005). Accordingly, we will not reverse a trial court's sentencing determination absent an abuse of discretion. *People v. Brown*, 2019 IL App (5th) 160329, ¶ 18, 145 N.E.3d 486.

¶ 44 First, defendant asserts his 10-year sentence is excessive because the trial court overemphasized his criminal history. Defendant asserts, if he had been convicted of an aggravated third DUI without a death, a Class 2 felony, the maximum sentence would have been seven years. See 625 ILCS 5/11-501(d)(1)(A), (d)(2)(B) (West 2018); 730 ILCS 5/5-4.5-35(a) (West 2018) ("The sentence of imprisonment shall be a determinate sentence of not less than 3 years and not more than 7 years."). However, defendant was convicted and sentenced for an aggravated DUI resulting in a fatality. The legislature has given this offense a sentencing range that differs from a standard Class 2 felony, specifically a term of imprisonment of not less than 3 years and not more than 14 years. See 625 ILCS 5/11-501(d)(2)(G) (West 2018). "A sentence within statutory limits will not be deemed excessive and an abuse of the court's discretion unless it is 'greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense.' " *People v. Pina*, 2019 IL App (4th) 170614, ¶ 20, 143 N.E.3d 794 (quoting *People v. Fern*, 189 Ill. 2d 48, 54, 723 N.E.2d 207, 210 (1999)). It was within the

discretion of the trial court to sentence defendant to a term within the statutory guidelines regardless of what the term may be for an unrelated offense.

¶ 45    Second, defendant asserts his sentence is excessive given his prior offenses took place almost two decades ago and thus, should have been demonstrative of defendant's rehabilitative potential. Although the court characterized defendant's criminal history as not "extensive," the court considered defendant had two prior misdemeanor DUI convictions in 1992 and 1999. The court observed that "the goal of the justice system is that people learn from their mistakes, serve whatever sentence is imposed, and then hopefully not return to the justice system." However, defendant was later convicted of a second DUI and then a third conviction in the instant case. The court found defendant's criminal history, despite the distance in time, represented a pattern, and it was not error for the trial court to consider that pattern in sentencing.

¶ 46    Third, defendant asserts his sentence is excessive given his law-abiding nature, stable employment history, strong support from his family and community, and compliance with pretrial release conditions. Whether we disagree or not, this is a matter which falls within the sound discretion of the trial court when deciding how much weight to give factors in aggravation and mitigation. *Fern*, 189 Ill. 2d at 53 (stating the balance to be struck between aggravating and mitigating factors is a matter of judicial discretion and a reviewing court must not substitute its judgment for that of the trial court). The trial court found this evidence of rehabilitative potential "questionable." The court stated when considering defendant's history of DUI convictions, "the hope would have been after each of those that you would not have consumed alcohol." Although the court acknowledged some mitigating factors applied, it also noted the likelihood of the circumstances reoccurring and likelihood of defendant committing another crime hinged on whether defendant chose to drink again in the future. Moreover, "[t]he existence of mitigating

factors does not require the trial court to reduce a sentence from the maximum allowed." *People v. Pippen*, 324 Ill. App. 3d 649, 652, 756 N.E.2d 474, 477 (2001). "A defendant's rehabilitative potential and other mitigating factors are not entitled to greater weight than the seriousness of the offense." *Pippen*, 324 Ill. App. 3d at 652. Therefore, it was not error for the trial court to find the retributive factors outweighed the rehabilitative factors in defendant's case.

¶ 47        Fourth, defendant asserts his sentence is excessive given his extensive medical issues. We disagree. We presume that the trial court considered all relevant factors and any mitigation evidence presented. *People v. Brewer*, 2013 IL App (1st) 072821, ¶ 55, 987 N.E.2d 938. At the sentencing hearing, the trial court stated it had reviewed both PSIs and "considered all statutory factors in aggravation and mitigation, [and] the recommendations and arguments of each of the parties in this case." Defendant provided the court a letter from Dr. Bruha detailing defendant's medical risks. The record clearly shows the court considered defendant's medical history and determined it did not equate to "extraordinary circumstances" necessary to negate the imposition of a prison sentence. Moreover, the court acknowledged, "I think in mitigation it's true that you have extensive medical issues." The court did not fail to consider defendant's medical issues when determining an appropriate sentence. We find no error, much less clear and obvious error.

¶ 48        Last, defendant argues his sentence is excessive given the hardship on his 18-year-old daughter. Defendant asserts the trial court is required to consider in mitigation whether defendant was "the parent of a child *** whose well-being will be negatively affected by the parent's absence." 730 ILCS 5/5-5-3.1(a)(18) (West 2020). However, defendant's daughter was no longer a minor at the time of defendant's sentencing. Illinois courts have long held that all terms of imprisonment create some hardship for the prisoner's dependents. See

*People v. Young*, 250 Ill. App. 3d 55, 65, 619 N.E.2d 851, 858 (1993). However, "[t]he existence of a mitigating factor does not obligate the trial court to impose a minimum sentence." *Young*, 250 Ill. App. 3d at 65. As discussed, we presume the trial court considered the evidence before it. *Brewer*, 2013 IL App (1st) 072821, ¶ 55. In this case, defendant's daughter testified as to the change in circumstances she would face due to defendant's imprisonment. It was not an abuse of discretion, much less clear and obvious error, for the court to determine defendant's adult daughter's change in living situation did not outweigh the factors supporting a 10-year prison sentence.

¶ 49    We conclude there was no error, and thus no plain error, in defendant's sentence of 10 years in prison for aggravated DUI involving a fatality. The trial court considered appropriate mitigating and aggravating factors and did not abuse its discretion in assigning weight to those factors when determining defendant's sentence.

¶ 50                                III. CONCLUSION

¶ 51    For the reasons stated, we affirm the trial court's judgment.

¶ 52    Affirmed.